UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61620-CIV-SEITZ

RONALD ORELIEN,

      Plaintiffs,

v.

GEORGIA PIG, INC., a Florida corporation,
JO ANN ANDERSON, individually, and WAYNE
ANDERSON, individually,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR JUDICIAL DISQUALIFICATION AND/OR RECUSAL,
AND MOTION FOR STAY PENDING RESOLUTION OF
DISQUALIFICATION/RECUSAL**

      Defendants and their counsel, by and through their undersigned counsel, and pursuant to
the Federal Rules of Civil Procedure, Local Rules for the Southern District of Florida, and 28
U.S.C. § 144 and 28 U.S.C. § 455, request the entry of an Order disqualifying and/or recusing
the district judge assigned to this case, the Honorable Patricia Ann Seitz, and Mr. Kleppin seeks
recusal of Judge Seitz in any and all other cases in which Mr. Kleppin is serving as counsel that
are assigned to her.  Plaintiffs also request that the case be stayed pending resolution of this
Motion.  In support of the Motion, Plaintiffs state:

<u>BACKGROUND</u>

      1.    This is an action for overtime and retaliation brought pursuant to the Fair Labor
Standards Act ("FLSA"). [D.E. 1].  The case Powell v. Carey Int'l, Inc., Case No. 05-21395-
CIV-SEITZ settled in 2007, but the Defendants, well aware that Judge Seitz had referred Mr.
Chris Kleppin to the Florida Bar for alleged unethical conduct in another case, *Bernal v. All
American Investment Realty, Inc., et al.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007) (March 23, 2007)
[D.E. 148 and 108 in *Bernal*, attached hereto as Exhibit 1], insisted that Judge Seitz determine a
"reasonable fee", as opposed to settling the fee claims at the same time in the manner that they
had previously handled other cases before other judges.  The Defendants also did this in the

*Perez* case taking advantage of what they perceived to be Judge Seitz's attitude toward Mr. Kleppin in those cases. That decision resulted in drastically reduced fee awards in both cases to undersigned counsel (totaling over $500,000), which spawned appeals in both cases that are still continuing. Recently, Judge Seitz recused herself from the *Perez* case (see D.E. 208 in *Perez v. Carey Int'l, Inc.*, Case No. 06-22225-CIV-MARTINEZ) which was transferred to Judge Seitz by the Defendants (the case was ironically originally assigned to Judge Martinez), and which was consolidated with the *Powell* case. [D.E. 218]. Concerning 8 Plaintiffs with claims in *Powell* and 4 Plaintiffs with claims in *Perez*, this Court severed those claims, compelled them to arbitration (which is presently set for several weeks from now), and retained jurisdiction over the claims of the arbitration Plaintiffs, for enforcement of any arbitral award [D.E. 240 at 13], and will oversee any award of attorneys fees by the arbitrator. *Perez v. Carey Int'l, Inc.*, 558 F. Supp. 2d 1265 (S.D. Fla. 2008). Further, one reason Judge Seitz gave in her recusal Order in *Perez* for why she is recusing herself is the admitted appearance of impropriety since she is a testifying witness against Mr. Kleppin in a Florida Bar proceeding, and that testimony, once given, may be given more than once (deposition and trial) and even in the future, if there are subsequent proceedings. Thus her recusal is warranted in this related proceeding, especially since the admitted appearance of impropriety is against the lawyer and not the client. Mr. Kleppin submitted a response to the *Bernal* sanctions order, rebutting every act of wrongdoing of which he was accused by Judge Seitz and Magistrate Judge McAliley. *See Bar Response*, attached hereto as Exhibit 2. Unfortunately, there are many findings in the Orders of Judge Seitz and McAliley that accuse Mr. Kleppin of things that are not supported in the record. For example, that Mr. Kleppin actively concealed the gross revenue of the corporate Defendants, and misrepresented what that gross revenue was, when stated repeatedly that he had gotten the client to agree to show the tax returns to opposing counsel, and that he was relying on the representation of his client that the clients' revenue was less than $500,000 annually. Another is the allegation that Mr. Kleppin instructed his client to obstruct discovery, when both Mr. Kleppin and the client testified that Mr. Kleppin instructed him that he had to take the discovery responses seriously and accurately and truthfully.

Judge Seitz stated at a hearing in *Powell* that Mr. Kleppin should take his time filing a motion for attorneys fees in this case, and suggested she may set a deadline for 60 days, but then shortly thereafter issued a final judgment in the case only giving the Plaintiffs 14 days in which

to file the Motion for Attorneys Fees (in a case with hundreds of docket entries and numerous plaintiffs).  Fourteen days from the date that the final judgment was issued was the same day that Mr. Kleppin's response to the Florida Bar was due, which is attached hereto as Exhibit 2.  The Final Judgment was issued on May 10, 2007.  (*See Final Judgment*, attached hereto as Exhibit 3).  The day before, May 9, 2007, Judge Seitz issued a final judgment in an FLSA case where other lawyers were involved, and where she gave them the full 30 days in which to submit their fee motion, and where she did not shorten the time by 16 days.  (*See Final Judgment*, attached hereto as Exhibit 4).  This treating Mr. Kleppin differently (less favorably) from other lawyers, especially when viewed in its context (that Mr. Kleppin had the response to the Bar's inquiry due) is a basis for recusal, and shows that Judge Seitz treats Mr. Kleppin less favorably from other lawyers.

2.     Defendants respectfully request that the district judge assigned to this case, the Honorable Patricia Ann Seitz, disqualify and/or recuse herself pursuant to 28 U.S.C. § 455(a) or 28 U.S.C. § 144, for numerous other reasons, including:  1) recently, shortly after Mr. Kleppin moved to recuse Judge Seitz in another case, see *Exime v. E.W. Ventures, Inc.*, 2009 WL 1423345 (S.D. Fla. 2009), in mid-May, 2009, the Florida Bar filed a complaint against Mr. Kleppin based on the referral from Judge Seitz from more than two (2) years in the past; 2) just a couple of weeks ago, the Florida Bar proffered that Judge Seitz is a witness that the Florida Bar intends to call at the proceeding to testify against Mr. Kleppin, and subsequent to that Mr. Kleppin listed Judge Seitz as a witness for his side; Judge Seitz was set for deposition,[1] but apparently will not testify in deposition or trial, and Judge Seitz is actively participating in the Bar hearing by disallowing Mr. Kleppin from deposing or having testify at trial two of his witnesses (Kabir Lalchandani and Robert E. Weisberg (see *Letter*, dated Oct. 1, 2009, from Dep't of Justice, attached hereto as Exhibit 10), additionally, she has stated that she does not intend to allow herself to be a witness because she does not have first-hand knowledge of those things that she found in her order (despite making explicit findings concerning what Mr.

---

[1] The Bar process concerning the setting of depositions is that subpoenas are sent out to the referee to issue, and such subpoena was sent to the referee on August 11, 2009, setting Judge Seitz for deposition. Apparently, the Bar referee wants Mr. Kleppin's attorney to agree on a time in which Judge Seitz will be deposed, and that letter was sent to Judge Seitz via Federal Express.  The Referee has since refused to compel the deposition of Judge Seitz.  The Bar hearing has started, but has not yet finished.  Mr. Kleppin intends to appeal the ruling denying his Motion to Compel the Deposition and Trial Testimony of Judge Seitz.

Kleppin's mental state was and intentions were at various times in the *Bernal* case, see Exhibit 9); 3) Florida Bar counsel had previously suggested to Mr. Kleppin's attorney that Judge Seitz was probably not going to be a witness, and that he would rely on her judicial opinion from the *Bernal* case, but at one point it appeared Judge Seitz intended to interject herself directly in the proceedings against Mr. Kleppin as a witness, but despite attempting to remove herself from that, is still active in the proceedings against Mr. Kleppin, as set forth in Exhibit 10; 4) Mr. Kleppin conducted a recent three-day trial before Judge Seitz in which Judge Seitz displayed an obvious personal dislike for Mr. Kleppin, and Kevin Hagenstad, one of the defendants in that case, has provided an affidavit stating that it is obvious to him that it is impossible for Judge Seitz to be fair to anyone represented by Mr. Kleppin; 5) Judge Seitz has referred to Mr. Kleppin in the *Perez* case (*Perez v. Carey Int'l, Inc.*, Case No. 06-22225) as a "Dr. Jekyll and Mr. Hyde"; 6) Judge Seitz has issued numerous opinions since the *Bernal* decision which seek to support the Florida Bar case against Mr. Kleppin, because she has attempted to find similar "misconduct" against Mr. Kleppin that she alleged he committed in the *Bernal* opinion (even though such misconduct never occurred); 7) Judge Seitz has clearly not followed legal precedent and has disregarded material facts when rendering decisions in Mr. Kleppin's cases; 8) numerous factual findings in the *Bernal* decision are not true and not supported by the record, and Judge Seitz concluded that Mr. Kleppin is dishonest which conclusion is not supported by record citations, which demonstrates that Judge Seitz concluded that Mr. Kleppin was dishonest, without actually having proof of that; attached hereto as Exhibit 2 is Mr. Kleppin's response to the initial Bar charges as proof of that; and 9) Judge Seitz ruled that a transcript and a memorandum that was relied on by the special master and the Court in the *Perez* case would be kept secret, and not made part of the court record, even though she was just reversed approximately one year before that by the Eleventh Circuit for doing that in a different case, and she acknowledged in a published article that she should not have done that.  (Julie Kay, *Florida Federal Judge Slammed for Secret Docketing* (Daily Bus. Rev., Nov. 15, 2005, attached hereto as Exhibit 5).  In fact Judge Seitz stated, "Like any human being, we make mistakes.  When your mistake is pointed out, you reconsider your action and you promptly make a correction."  *Id.* at 1.  Unfortunately, Judge Seitz has, in the *Perez* case, ruled that both a transcript of a proceeding and a memorandum of law that the special master and the Court considered in ruling on the motion for attorneys fees were not allowed to be filed by the Court, and are secret documents which are not

part of the record, as if they never existed, which is similar to the situation that Judge Seitz was reversed for.  A review of these documents, if allowed, would have supported Mr. Kleppin's fee and costs requests in this case.

The foregoing, which will be discussed in turn, demonstrates that 1) an objective fully informed layperson would entertain significant doubt about Judge Seitz's impartiality; and 2) Judge Seitz has actual bias against Mr. Kleppin and her continuing to be the judge assigned to his cases gives off the appearance of impropriety.  The Court should also note that Mr. Kleppin's law firm stopped sending Bar-approved advertisements to prospective clients in any cases that Judge Seitz is the assigned Judge, because it is apparent to attorneys in the firm that Judge Seitz cannot be fair to them or their clients.

Undersigned counsel denies any wrongdoing in the *Bernal* case, other than filing an affidavit with the Court that the Court found contained false information (Mr. Tariq Hussain testified that the information in the affidavit was not false but true, and Mr. Khan (the affiant) took the Fifth Amendment with respect to the portion of the affidavit that Judge Seitz found was false), but if the affidavit did contain false information, it was because the client (Mr. Hussain) had lied to him, and Mr. Kleppin did not know that the affidavit contained false information. Undersigned counsel hoped that Judge Seitz could put the *Bernal* case behind her, even though it contained a Bar referral, and undersigned counsel sincerely hoped that the *Exime* trial would allow Judge Seitz to see that he is a competent, knowledgeable, and honest attorney, but the gratuitous antagonism (constant berating, interrupting, even shaking with anger which was completely unwarranted under the circumstances on two occasions during sidebar conferences) displayed toward undersigned counsel demonstrates that Judge Seitz is not able to put the *Bernal* case behind her, and move forward.  Judge Seitz's cheeks were literally quivering in anger when she requested that counsel come before her for two sidebar conferences, and in one of those conferences Judge Seitz accused undersigned counsel of failing during the discovery period to go to the client's place of operation and look for certain documents, an allegation that she made toward undersigned counsel in *Bernal*—in the *Exime* case, but undersigned counsel had nothing to do with the discovery process in the *Exime* case.  The other conference pertained to Mr. Kleppin simply properly trying to impeach a witness, that should not have resulted in any anger from the Judge.  The attached Affidavit of Kevin Hagenstad (as Exhibit 6) demonstrates that Judge Seitz's "impartiality might reasonably be questioned", given the circumstances that he

observed at this trial, and that her demeanor toward Mr. Kleppin is not mere friction or simply anger, but demonstrates unequivocally that she cannot be fair to Mr. Kleppin or his clients.

3.     In the alternative, Defendants respectfully move for the disqualification and/or recusal of Judge Seitz under 28 U.S.C. § 144 based upon the personal bias and prejudice demonstrated against Defendants' counsel.  Therefore, disqualification and/or recusal pursuant to 28 U.S.C. § 144 is mandatory. Defendants submit the Declaration of Kevin Hagenstad attached as Exhibit 6 in support of their request for the disqualification and/or recusal of Judge Seitz pursuant to 28 U.S.C. § 144.  It is clear from that declaration, as well as the facts and circumstances present in ¶ 2, *supra*, that Judge Seitz possesses personal bias and prejudice against undersigned counsel.

4.     Finally, Defendants request that this action be stayed pending a ruling on this Motion.  This Motion is filed now, because recusal motions are to be filed at the earliest possible instance that the basis for the recusal was known.

5.     Pursuant to Local Rule 7.1, counsel for Defendants have conferred with counsel for Plaintiff concerning the issues raised by this Motion, but he has not responded.

WHEREFORE, Defendants request the entry of an Order disqualifying and/or recusing Honorable Patricia Ann Seitz from this case and all future cases where he is counsel, and staying this action pending the rulings on this Motion.  Defendants also request an expedited Order on this Motion.

This Motion is filed after a similar motion was denied in the *Exime* case, but granted in the Perez case, as there has been a change in circumstances since Judge Moreno's ruling, as the Bar has filed suit, it is now clear to Mr. Kleppin that Judge Seitz at one time intended to be a witness in the Bar proceedings against him, but is still actively participating in the proceedings against him by disallowing witnesses to testify, and the decision not compelling her to testify is intended to be appealed, and since that decision, Mr. Kleppin has discovered that Judge Seitz treated Gregg Shavitz, Esq., an FLSA plaintiffs' attorney, more favorably, and that Judge Seitz has unauthorized *ex parte* communications with Special Master Weisberg.  Moreover, in this case, the ruling is different because it affects Mr. Kleppin personally, while in *Exime* it was the client, one person removed from Mr. Kleppin, whose case Judge Seitz was ruling on.  This Motion was filed as soon as possible—no delay—after Mr. Kleppin learned that Judge Seitz was assigned to this case (he was in trial on Thursday).

## MEMORANDUM OF LAW

### I.    GENERAL PRONOUNCEMENTS REGARDING RECUSAL AND/OR DISQUALIFICATION OF A JUDGE

"Canon 2 [of the Code of Conduct for United States Judges] tells judges to 'avoid impropriety and the appearance of impropriety in all activities,' on the bench and off." *Dinkins v. Leavitt*, 2008 U.S. App. Lexis 22847, *14 (11th Cir. 2008) (citations omitted). The Code of Conduct for United States Judges and case law make clear that judges should avoid even the appearance of impropriety. *United States v. South Florida Water Management Dist.*, 290 F. Supp. 2d 1356, 1358 (S.D.Fla. 2003). "The guarantee to the [parties and counsel] of a totally fair and impartial tribunal, and the protection of the integrity and dignity of the judicial process from any hint of appearance of bias is the palladium of our judicial system." *United States v. Alabama*, 828 F.2d 1532, 1539 (11th Cir. 1987). To ensure that the courts remain above reproach, the Congress passed statutory provisions governing the disqualification of federal judges. The relevant statutes are 28 U.S.C. §§ 144 and 455.

### II.    LEGAL PRINCIPLES GOVERNING RECUSAL AND/OR DISQUALIFICATION OF A JUDGE, AND THE STATUTES THAT PROVIDE FOR SAME

#### A.    28 U.S.C. § 455

Title 28 U.S.C. § 455 provides, in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1)   Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

Regarding subsection (a) of § 455, the Eleventh Circuit repeatedly has stated:

> The test for determining whether a judge's impartiality might reasonably be questioned is an objective one, and requires asking whether a disinterested observer fully informed of the facts would entertain a significant doubt as to the judge's impartiality.

*Biven Gardens Office v. Barnett Banks of Florida*, 140 F.32d 898, 912 (11th Cir. 1998) (citing *Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 385 (11th Cir. 1991) and *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)).  The intent underlying § 455(a) is "to promote public confidence in the integrity of the judicial process" and "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Corp.*, 488 U.S. 847, 860 (1988); *see also Parker*, 855 F.2d at 1523 (quoting *Liljeberg*, 486 U.S. at 860, 865)).

Moreover, in light of the intent of the statute, disqualification should be granted under § 455(a) where a judge would harbor any doubt concerning whether disqualification is appropriate. *Parker*, 855 F.2d at 1524 (citing *United States v. Alabama*, 828 F.2d 1532, 1540 (11th Cir. 1987)).  Neither actual partially, nor knowledge of the disqualifying circumstances on the part of the judge during the affected proceeding, are prerequisites to disqualification under § 455(a).  *Id.* (citing *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988), *cert. denied*, 490 U.S. 1066 (1989)).

Because § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, the statute *does not give a judge discretion as to whether to recuse himself*.  *United States v. Garruda*, 869 F.2d 1574, 1581 (11th Cir. 1994) (citing 28 U.S.C. § 455(a)). Rather, the statute instructs the judge to disqualify herself if the public may perceive her, or her rulings, as being affected.  *United States v. Kelly*, 888 F.2d at 744-45.  Thus, "a judge faced with a potential ground for disqualification ought to consider how h[er] participation in a given case looks to the average person on the street."  *Garruda*, 869 F.2d at 1581 (citations omitted).  Section 455(a) requires judges to resolve any doubts they may have as to whether they should hear a case in favor of disqualification.  *Id.*  Disqualification/recusal under § 455(b) is mandatory because "the potential for conflicts of interest are readily apparent."  *Brown v. Brock*, 169 Fed. Appx. 579, 583 (11th Cir. 2006) (citations omitted).

The Declaration of Kevin Hagenstad makes clear that Judge Seitz possesses an appearance of partiality, because he observed it during his trial.  Mr. Hagenstad clearly sets forth that Judge Seitz's treatment of Mr. Kleppin was not just "mere friction" between counsel and the judge, but that Judge Seitz cannot be fair to him.  Further, the fact that Judge Seitz is actively participating in an adversary manner to Mr. Kleppin in a Florida Bar proceeding clearly puts into doubt her ability to be impartial in any proceeding involving Mr. Kleppin or his client.  Judge

Seitz should not be both complaining witness, testifying witness, and in another case, an "impartial" judge.

**B.**    **28 U.S.C. § 144**

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144

Where a litigant submits a sufficient affidavit and certificate, recusal is *mandatory*:  the presiding judge may take no further action in the litigant's case.  *United States v. Alabama*, 828 F.2d at 1540. Moreover, the district court must take as true all of the facts stated in the affidavit. *Id.*; *Berger v. United States*, 255 U.S. 22, 36 (1921) ("The section withdraws from the presiding judge a decision upon the truth of the matters alleged").  *Id.*  To warrant disqualification the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger,* 255 U.S. at 33-34.

**III.  DISQUALIFICATION/RECUSAL IS MANDATORY IN THE INSTANT CASE**

**A.    Disqualification/Recusal Is Mandatory Under § 455(a) and (b)(1) & § 144**

The fact that Judge Seitz is a witness (who may at some point testify) in a Florida Bar disciplinary proceeding against Mr. Kleppin, and her continued involvement in that proceeding, particularly combined with the other evidence concerning her partiality as set forth herein, requires the conclusion that she should recuse herself.  She cannot be fair concerning fees and costs with respect to Mr. Kleppin.  Exhibit 1 demonstrates that Judge Seitz has a propensity to judge Mr. Kleppin overly-harshly, and in fact makes factual findings that he did things that were unethical that simply never happened.  Moreover, Judge Seitz has mis-cited the law (though she

accuses Mr. Kleppin of mis-citing the law), on multiple instances.  For example, Judge Seitz held that the Eleventh Circuit in *Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.3d 794, 799 (11th Cir. 1988), ruled that interest on the costs begins to run from the date of the final judgment associated with the award of costs, not from the original final judgment in favor of the prevailing party on the merits.  *Powell v. Carey Intern., Inc.*, 548 F. Supp. 2d 1351, 1364 (S.D. Fla. 2008). Judge Seitz erred, because Eleventh Circuit law is clear at the time that she ruled that the interest for a cost judgment does relate back to the original judgment as to liability.  *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994) (relying on *Georgia* for the holding that "interest shall accrue on Paine Webber's taxable costs from the date the court entered final judgment in favor of Paine Webber on the merits of BankAtlantic's action, November 24, 1989"—BankAtlantic asserted that the cost interest should run from July 3, 1991, the day the district court adopted the magistrate's report and recommendation as to costs).

Further, there are findings of fact that Judge Seitz has made that are not consistent with the record evidence.  With respect to this case, Judge Seitz disregarded record evidence and made conclusions contrary to the record evidence to "justify" drastically reducing attorneys' fees.  For example (and all docket entry references in this paragraph are to the *Powell* case), the following findings made by Judge Seitz were wrong:  1) the Defendants "did not contest that Plaintiffs should be treated as employees.  Thus, the simple triable issue was the number of compensable hours for each Plaintiff" (R543-6-fee order), but the truth is, the Defendants claimed that they had a reasonable belief that they thought the drivers were independent contractors which precluded a finding of willfulness or the imposition of liquidated damages) (R586-88-89), which required that the employee issue would be litigated; 2) "the disturbing undercurrent in this case from the outset has been on what will ultimately generate the greatest fees rather than legitimate recovery for Plaintiffs" (R543-6-7), when the court specifically found in October, 2005, several months in the suit that the Defendants were the cause of the fees (R520-Ex.8atpp.18-19); 3) "Plaintiff's counsel's actions delayed the resolution of the action for two years and actually resulted in Plaintiffs Powell, Betancourt, McIntyre, and Sarfaraz receiving less than they would have received had they settled their claims prior to [instituting] this action" (R543-8-9), but the truth is that Powell received more money, Betancourt and McIntyre wanted to accept their pre-suit settlement offers, but the Defendants would not let them unless every single plaintiff settled and Powell agreed to quit his job with Defendants (R520-5&Ex.2atp.2); 4)

"[t]he parties have not presented evidence of any preliminary offers to the other 11 Plaintiffs" (R543-9 n.9), that is utterly not true, as the parties submitted the demand letters pre-suit as exhibits to the fee motion and response, which showed that Errol Robinson and Viliam Kralovic received more money than they were offered by the Defendants (R520-6&n.4;R435;R454); 5) "notwithstanding the fact that this legal issue [whether the drivers were entitled to half-time or time and one-half overtime pay] had been previously determined under identical circumstances, Plaintiffs did not implement this method when estimating damages during both the settlement negotiations prior to suit and throughout the litigation" (R543-9), that is absolutely not true, as the Plaintiffs calculated their damages using a half-time measure pre-suit, and also in the Joint Scheduling Report (R48-21-23;R520-4&Ex.1); 6) "on the eve of trial, Plaintiffs were able to provide specific calculations of work hours on a weekly basis . . . with detailed figures of actual hours worked" (R543), that is false, as the figures given even on the eve of trial were nothing but estimates that were no more accurate than the averages given (Reply to Eleventh Circuit Brief at 32); 7) the court's finding that Kleppin's work was "sloppy, inaccurate, and reflected poor legal analysis" when the court stated that Kleppin "write[s] beautifully" (R569-9); 8) punishing the Plaintiffs for re-litigating the calculation of overtime finding from Judge Ungaro in previous litigation between different parties (R543-14), while not punishing the Defendant for re-litigating the employee issue (at least as willfulness and liquidated damages) and re-litigating the motor carrier exemption; and 9) reducing the lodestar by 67% because of Plaintiff's counsel's "refusal to aid in settlement of this case in the early stages" (R543-21), when the truth is that Defendants ended settlement negotiations, and said that they would not settle, even though Plaintiff's counsel told them that two of the Plaintiffs (Betancourt and McIntyre) wanted to settle.  (R527-Ex.21).

In other cases, Plaintiffs respectfully submit that Judge Seitz's conduct demonstrates, at a minimum, an apparent bias or prejudice against Plaintiffs and Plaintiffs' counsel, such that disqualification/recusal is mandatory.  Judge Seitz has made numerous comments and gestures which give the appearance of a lack of impartiality, thereby warranting dismissal under § 455, *United States v. Holland*, 655 F.2d 44 (5th Cir. 1981).[2]  One need only review the Declaration of

---

[2] In *Bonner v. Prichard*, 661 F.2d 1201 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered on or before September 30, 1981.

Kevin Hagenstad for that.  For example, Mr. Hagenstad noted that Judge Seitz favored the Plaintiff during jury selection, as follows:

> 8.     The first time that I was able to witness this Court in action was during the first day of trial.  One of the first tasks at hand was jury selection.  It appeared to me that the Court was asking the jurors questions that favored the Plaintiff (*e.g.*, employees in general) and not Defendants (employers in general).  For example, the Court asked the potential jurors whether they had any predispositions toward siding with employers in general, but did not ask these same questions concerning whether any potential jurors had predispositions to side with employees.  In fact, Mr. Kleppin had to use his limited time in voir dire to ask the potential jurors those questions.   In addition, a potential juror, when questioned by Mr. Kleppin, had to admit that she could not be fair to the Defendants (that is, before she heard any facts she was predisposed to favor the Plaintiff) both because she perceived that the Plaintiff had less money than the Defendants and because the Plaintiff was an employee having a dispute with an employer.  However, the Court, despite that admission, did not strike that potential juror for cause.

> 9.     During the peremptory strikes, after Plaintiff's counsel struck three white, Hispanic individuals, I witnessed the Court become unnecessarily hostile to Mr. Kleppin for raising a *Batson* challenge (what I understand to be a suggestion that the opposing counsel is using a peremptory strike to improperly strike a potential juror because of that juror's race and/or gender).

(*Declaration of Hagenstad* ¶¶ 8-9).  Mr. Hagenstad observed the personal dislike Judge Seitz exhibited during legal arguments during the trial, as follows:

> 10.     There were legal arguments during the trial and evidentiary challenges, and I observed the Court act in a hostile and dismissive manner toward Mr. Kleppin that demonstrated a personal dislike for him.  It was clear to me that I was not receiving a fair trial, and I knew that the Court's actions could not possibly be directed toward me, because I never met or heard of Judge Seitz until I saw her the first day of trial, when she took the bench.  After what I witnessed, I do not believe any litigant represented by Mr. Kleppin could ever receive a fair trial before Judge Seitz, and I do not believe that Judge Seitz could ever be fair to him.   I will give numerous examples concerning why I believe this.

*Id.* ¶ 10.  Hagenstad witnessed the Court treating Plaintiff's counsel more favorably than undersigned counsel, as follows:

> 11.     Throughout the trial, Mr. Kleppin always showed the Court his respect.  Before speaking with the Court, he would say, "May it please the Court . . . ."  The Plaintiff's counsel did not.  Before speaking to the Court, Mr. Kleppin would stand and button his top suit-coat button, and did not interrupt

the Court. To the contrary, the opposing lawyer on numerous occasions during the trial did not always stand up when being addressed by the Court, did not button his top suit-coat button, and on occasion felt empowered to interrupt the Court in mid-sentence. Mr. Kleppin continued to show his respect for the Court despite the belittling and berating of him by the Court, as set forth below. Mr. Kleppin obviously knows the rules of evidence and rules of procedure, because he would often refer to specific rule numbers by number, while raising an objection or making a legal argument. On the other hand, the Plaintiff's counsel rarely did. Yet, the Court repeatedly berated Mr. Kleppin and accused him of not knowing the rules of evidence and procedure, and not knowing how to try a case. Despite this berating, Mr. Kleppin, to his credit, always maintained his respect for the Court, and did not lose his sense of professionalism.

*Id.* ¶ 11.

Hagenstad observed Judge Seitz acting in a manner that conveyed to him that Judge Seitz has a personal dislike of undersigned counsel, and that that dislike manifests itself in how she treats him, and rules on issues in the case, as follows:

12. Concerning the use at trial of the Plaintiff's Statement of Claim, to which Mr. Kleppin referred in his opening statement, the Court limited Mr. Kleppin's ability to cross-examine the Plaintiff on it (despite that it is filed of record with the Court and sets forth what the Plaintiff believes that she is owed), and then, the next day, allowed Mr. Kleppin to question both the Plaintiff and the Plaintiff's counsel to determine how the Statement of Claim was drafted to see whether it was truly her statement (or someone else's, such as her attorney). During that voir dire, the Plaintiff testified that she provided the information on the Statement of Claim to the Plaintiff's lawyer, and Mr. Stern could not remember whether he had anything to do with the Statement of Claim (thus he could not rebut her testimony that she provided the information to counsel). Yet, despite that it was clear that the Statement of Claim should be able to be used as impeachment evidence as an admission by a party-opponent, the Court held that Mr. Kleppin could not impeach Plaintiff with it, and could not admit it into evidence. It should have been perfectly clear that because Plaintiff said what was on the form is what she told her attorney, and the attorney could not rebut that, that the Statement of Claim was an admission by a party-opponent.

13. It was clear to me that she could not be fair to Mr. Kleppin, that she obviously had an intense personal dislike of Mr. Kleppin, and that she could not contain herself from openly demonstrating that in how she treated Mr. Kleppin all throughout the trial. This caused me on at least one occasion during the trial to ask Mr. Kleppin whether we could have the case transferred to another judge. Mr. Kleppin assured me that, despite this treatment of him

by Judge Seitz that he had faith in the jury system and that the case should proceed because if I had to start the trial over that would be quite costly.

\* \* \*

18.    After the jury came back with its verdict, but before the verdict was read into the record, Judge Seitz stated, while solely looking at me and Mr. Kleppin, not the Plaintiff or her counsel, that when the jury verdict was read, she wanted counsel and the parties to remain calm.  It was clear to me that she thought that the Plaintiff would prevail, and she thought either myself or Mr. Kleppin would openly react negatively toward her because of the manner in which conducted herself during the trial.  Mr. Kleppin had previously told me to remain stoic while the verdict was read.  I am a former fighter pilot who fought for this country in combat, and was shot at by surface-to-air missiles.  I can remain calm under pressure, although this trial made me more nervous than my combat missions, and I told Judge Seitz that at the end of the trial.

*Id.* ¶¶ 12-18.  Hagenstad plainly testified that Judge Seitz cannot be fair to his counsel or him:

19.    I saw first-hand that Judge Seitz harbors and exhibits personal dislike toward Mr.

Kleppin, and that that conclusion is obvious by what I saw during three (3) days of trial.  Judge

Seitz, in my opinion from what I have seen during a three-day trial, cannot be fair to Mr.

Kleppin, and thus cannot be fair to me, because Mr. Kleppin represents me.

20.    I believe that Judge Seitz should recuse herself from any further rulings in cases involving Mr. Kleppin.  I am aware that Judge Seitz did not recuse herself when Mr. Kleppin filed a motion to recuse her in my case.  I am shocked that Judge Seitz does not recuse herself from all of Mr. Kleppin's cases, given her dislike of him, including from my case.  I am aware that the opinion denying the motion to recuse in my case concluded that what happened in my case was simply "friction" between Judge Seitz and Mr. Kleppin.  That conclusion is not true.  Mr. Kleppin exhibited no friction toward Judge Seitz, as the "friction" was all one way.  The behavior that Judge Seitz displayed toward Mr. Kleppin cannot be fairly described as simply being "friction" that she has toward Mr. Kleppin, but intense personal dislike, to the point where it is impossible for Judge Seitz to be fair to Mr. Kleppin or his clients.  Further, the manner in which Judge Seitz treated Mr. Kleppin at my trial, and I was there and observed it, cannot be described as "impatience, dissatisfaction, annoyance, and even anger with [Mr. Kleppin]."  As stated earlier, I have significant doubt about Judge Seitz's impartiality and her treatment of Mr. Kleppin displayed a deep-seated antagonism that makes fair judgment toward him and his clients impossible.

*Id.* ¶¶ 19, 20.

Based upon these comments, a "disinterested observer fully informed of the facts would entertain a significant doubt as to the judge's impartiality." *See Biven Gardens Office v. Barnett Banks of Florida*, 140 F.32d 898, 912 (11th Cir. 1998). Moreover, while this is not even a close case for disqualification/recusal under § 455(a), any doubts concerning whether disqualification is appropriate must be resolved in Defendants' favor. *See Parker, Garruda.* Because Judge Seitz's comments and actions would cause the "average person on the street" to "entertain a significant doubt" about her impartiality in the instant case, there is no discretion and disqualification/recusal is mandatory. *See, Kelly, Garruda.*

Further, Judge Seitz's generalized treatment toward undersigned counsel, requires the conclusion that Judge Seitz is pre-judging the cases that he is involved in and is thus allowing her own biases or prejudices to interfere with effective and impartial judicial administration of those cases. To personally attack the veracity and competence of a party's lawyer, particularly one in which Judge Seitz has acknowledged has "impressive credentials", *Perez v. Carey Int'l, Inc.*, 2008 WL 4490750 n.4 (S.D Fla. 2008), requires the conclusion that she is basing her treatment on undersigned counsel upon matters extraneous to the merits of the claim. The Motion that Judge Seitz was ruling on in the *Perez* case was a motion for attorneys fees in which undersigned counsel cited to the Court the case numbers of the last five (5) jury trials in a row that he had won and approximately 45 summary judgment rulings as to which he prevailed that are published on Westlaw. Any objective, reasonable person would, under the circumstances, have reason to doubt Judge Seitz's impartiality. Accordingly, disqualification is mandated under § 455(a).

For the same reasons disqualification/recusal is mandated under § 455(a), it also is mandated under § 455(b)(1), as Judge Seitz's comments and actions demonstrate a personal bias or prejudice concerning defense counsel. Judge Seitz has made generalized conclusions (that defense counsel is incompetent, does not know how to ask a question of a witness, has a vendetta against his opposing counsel, has no knowledge of the rules of evidence or procedure), without regard to the facts. Judge Seitz's personal bias or prejudice to defense counsel constitutes mandatory grounds for disqualification/recusal under § 455(b)(1) because "the potential for conflicts of interest are readily apparent." *See Brown*, 169 Fed. Appx. at 583.

15

For all these reasons, Judge Seitz's disqualification/recusal is mandatory under § 455 (a) and (b)(1).[3]

In the instant case, Defendants have filed their own Declaration averring to Judge Seitz's personal bias or prejudice against both undersigned counsel and Mr. Hagenstad (because undersigned counsel represents him).  (*See Declaration of Hagenstad*, attached hereto as Exhibit 6).

Judge Seitz's comments and other actions demonstrate that she has pre-judged the case because undersigned counsel was counsel of record and has an actual bias or prejudice against him.  Judge Seitz's comments and actions demonstrate "fair support to the charge of a 'bent of mind' that may prevent or impede impartially or judgment."  *United States v. Townsend*, 478 F.2d 1072 (3[d] Cir. 1972).  Moreover, the Hagenstad Declaration demonstrates that Judge Seitz has an actual bias or prejudice against undersigned counsel and his client, as set forth in more detail above.  Based upon these facts, disqualification/recusal is mandatory.  For all these reasons, Judge Seitz's disqualification/recusal is mandatory under §144.

Recusal is also required because Judge Seitz is a witness against Mr. Kleppin in another proceeding, of which she is the complaining witness, and she will be deposed by Mr. Kleppin. This sort of adversarial role requires that Judge Seitz recusal herself, because the appearance of impropriety is significant.  A judge cannot testify that a member of the Bar should be disbarred on one day and on the next rule on motions that that lawyer has filed in her Court.  The appearance of impropriety is further strengthened by the fact that the Judge has interjected herself into the Florida Bar proceeding, when her own opinion would otherwise be sufficient evidence for the Bar attorney to rely on.

The fact that Judge Seitz referred to Mr. Kleppin as "Dr. Jekyll and Mr. Hyde" requires recusal, and also the fact that she had *ex parte* communications with the special master about an issue that did not concern her at all (the return of certain documents), but rather the special master was the final authority concerning the return of documents.

---

[3] While Defendants recognize that judicial rulings alone 'almost never constitute a valid basis for a bias or partiality motion," they are a valid basis "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 551, 554-55 (1994). Plaintiff submits that Judge Seitz's rulings—as well as her comments—demonstrates that Judge Seitz's animus toward Mr. Kleppin has risen to the level to satisfy the *Liteky* standard and for this additional reason, disqualification/recusal is required under § 455.

The Court's Order appointing Mr. Weisberg Special Master in the *Perez* case was silent as to whether the Special Master could have *ex parte* communications with the Court. Rule 53, which governs the appointments of special masters specifically states that if a court and a special master are going to communicate *ex parte*, the order appointing the special master must set forth "the circumstances, if any, in which the master may communicate *ex parte* with the court or a party". Fed. R. Civ. P. 53(b)(2)(B). It is clear that there have been *ex parte* communications between the Special Master and the Court, because the Special Master's invoice specifically seeks to be compensated for "[c]onference with Judge Seitz re: status of document return issue". [D.E. 197 at 4]. Notably, the Special Master billed .25 of an hour for this conference, thus, the Special Master billed for a 15-minute conference with the Court that was *ex parte*. While this conversation is described as regarding the "status" of the issue, the status of the issue could not have required 15 minutes to discuss in person with Judge Seitz, but rather could have been determined in a much shorter conversation—such as a 1-minute telephone call, and if the Court was concerned about the status, the phone call could have been between the Special Master and the Court's clerk and/or the parties could have been informed. Ostensibly, it appears that the conversation concerned substantive issues with regard to the return of documents. However, there was absolutely no reason for any communication between the Special Master and Judge Seitz, because under the parties' settlement agreement in *Perez*, the Special Master had the authority to make a final decision concerning the return of any documents. [D.E. 193 at 2]. Thus, there should have been no issue between the Court and the Special Master concerning the return of the documents that warranted any *ex parte* communication between them.

It is no secret that Judge Seitz does not think highly of undersigned counsel. Despite conceding that he has "impressive credentials", *Perez v. Carey Int'l, Inc.*, 2008 WL 4490750 (S.D. Fla. 2008), she awarded him the hourly rate that defense counsel's paralegals charge, *Powell v. Carey Int'l, Inc.*, 548 F. Supp. 2d (S.D. Fla. 2007), has referred to him as a Dr. Jekyll-and-Mr. Hyde,[4] and has referred him to the Florida Bar for 1) incompetence (despite his impressive credentials); 2) dishonesty—lying and making misrepresentations to the Court; 3) filing improper discovery; and 4) failing to review documents at his client's place of business,

---

[4] The Dr.-Jekyll-and-Mr.-Hyde reference that came at a hearing during the *Powell* case is obviously a reference to Robert Louis Stevenson's fictional book by that title, wherein Dr. Jekyll was a medical doctor of questionable character and morality who created a special potion that turned him into an alter

*Bernal v. All Am. Investment Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007); treated him in a way at a trial of another case that made a third-party observer conclude that Judge Seitz harbors an intense personal dislike of undersigned counsel, see *Exime v. E.W. Ventures, Inc.*, and has lashed out at him in an order denying a motion for summary judgment in *Exime*, accusing him of asserting completely misplaced legal arguments, though other courts have rejected Judge Seitz's legal reasoning on that issue, *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349 (S.D. Fla. 2008) (Gold, J.), and assumed (without making any appropriate inquiry) that he improperly billed his client (too much for certain work).   *Exime v. E.W. Ventures, Inc.*, 591 F. Supp.2d 1364 (S.D. Fla. 2008).  It is clear to undersigned counsel that Judge Seitz's dislike for him is interfering with her decision-making ability to be fair in cases in which he comes before her.

The attached response to the Bar's inquiry clearly shows that Judge Seitz assumed Mr. Kleppin was not an honest lawyer and drafted an opinion to reach that conclusion, but in so doing disregarded critical record evidence that overwhelmingly demonstrates that Mr. Kleppin was not dishonest and did not instruct his client to engage in obstructionist discovery tactics, yet, although there was no evidence to the contrary, Judge Seitz made those findings.  The reader of this Motion needs to fully review Exhibit 2 and its attachments attached hereto.

## IV.   THE PROCEEDINGS IN THIS MATTER SHOULD BE STAYED PENDING RESOLUTION OF THIS MOTION

District courts enjoy broad discretion to stay proceedings.  *Bocciolone v. Solowsky*, 2008 U.S. Dist. Lexis 59170 (S.D. Fla. 2008).  District "courts have inherent power to manage their dockets and stay proceedings."  *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 2008 U.S. Dist. Lexis 10359, *14 (S.D. Fla. 2008).  Stays are appropriate to promote judicial economy. *Sosa v. Hames*, 2006 U.S. Dist. Lexis 29849, *2 (S.D. Fla. 2006).  Stays are warranted until the issue of disqualification is resolved.  *See Jones v. United States*, 2008 U.S. Dist. Lexis 49341 (S.D. Fla. 2008); *Hermann v. Gutterguard*, 2008 U.S. Dist. Lexis 22786 (N.D. Ga. 2008).

Defendants seek through their Motion to have this matter and future cases re-assigned to a different Judge based both upon the fact that the district Judge's impartiality could reasonably be questioned and based upon the district court's actual personal bias and prejudice against Defendants' counsel and Defendants.  Hence, it would be inappropriate and a waste of judicial

---

ego named Mr. Hyde, who was a psychopathic murderer; for example, in the book Mr. Hyde is described as beating his victims so hard with a cane that the body literally bounces off of the pavement.

resources to proceed in this matter until the present Motion is decided.  Furthermore, both basic fairness and judicial economy[5] would be served by staying this action until the resolution of the instant Motion.  *See Jones v. United States*, 2008 U.S. Dist. Lexis 49341 (S.D. Fla. 2008); *Hermann v. Gutterguard*, 2008 U.S. Dist. Lexis 22786 (N.D. Ga. 2008).

For these reasons, Defendants request that a stay of proceedings be entered in this matter pending resolution of this Motion.

### VI.   CERTIFICATE OF GOOD FAITH

I certify that, pursuant to 28 U.S.C. § 144, the instant motion was brought in good faith. It is extremely clear to me, Chris Kleppin, that Judge Seitz cannot and will not be fair to me in any proceeding before her because of the intense personal dislike that she harbors for me.  She is going to testify in a hearing against me that I am a liar (as she said in her order in *Bernal*—which is not true), I misrepresented things to the Court (I did not), and I should be disbarred. Unfortunately, I just found this out.  She should not have presided over the *Exime* trial and should not have ruled on motions for fees and costs, and other matters in the other cases that I have that are assigned to her, knowing this.  The arguments set forth above show beyond a doubt that she cannot be fair to me or my clients.  A court in Florida once observed that:  "Prejudice of a judge is a delicate question to raise, but when raised as a bar to the trial of a cause, if predicated with a modicum of reason, the judge against who raised should be prompt to recuse himself.  No judge under any circumstances is warranted in sitting in the trial of a cause whose neutrality is shattered or even questioned."  *Brewton v. Kelly*, 166 So. 2d 834, 836 (Fla. 2d DCA 1964).

Conferral occurred, and the Defendants do not agree to the relief sought.

Respectfully submitted,

By:/s/Chris Kleppin____
    Chris Kleppin
    Fla. Bar No. 625485

---

[5]Judicial economy would be served because if disqualification or recusal is granted, prior orders of the recused judge may be subject to review or vacation.  *See South Florida Water Management District*, 290 F. Supp. 2d at 1361.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 16, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Keith M Stern, Esq., The Shavitz Law Group, P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, Florida 33432) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="margin-left:50%">

Glasser, Boreth & Kleppin
Attorneys for Defendants
8751 W. Broward Blvd
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  Glabor@aol.com

By:/s/Chris Kleppin___
     Chris Kleppin
     Fla. Bar No. 625485

</div>